UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

|  |  |  |
|---|---|---|
| ROBERT J. PARDEE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:14-cv-324 |
| | ) | |
| v. | ) | Honorable Phillip J. Green |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **OPINION** |
| Defendant. | ) | |
| | ) | |

This is a social security action brought under 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security finding that plaintiff was not disabled on and after February 24, 2009, and was no longer entitled to disability insurance (DIB) benefits.  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States Magistrate Judge conduct all further proceedings in this case, including entry of final judgment.  (Dkt. 9).

On February 13, 2009, plaintiff filed a protective application for DIB benefits, alleging a November 11, 2007, onset of disability.  (Page ID 191, 336-39).  Plaintiff's claim was denied on initial review.  (Page ID 212-24).  On February 25, 2011, plaintiff received a hearing before an ALJ, at which he was represented by counsel.  (Page ID 116-68).  On March 25, 2011, the ALJ found that plaintiff had  been disabled from his alleged onset of disability of November 11, 2007, through February 23, 2009.  (Page ID

191-201).   The ALJ found that plaintiff's disability ended as of February 24, 2009.
(Page ID 201).   On February 3, 2012, the Appeals Council affirmed the portion of the
ALJ's decision finding that plaintiff was disabled from November 11, 2007, through
February 23, 2009.   (Page ID 208-10).   The Appeals Council vacated the portion of the
ALJ's opinion finding that plaintiff's disability had ended on February 24, 2009, and
remanded the matter for further proceedings.   (*Id.*).

On July 5, 2012, plaintiff received a second hearing before the same ALJ, at
which he was represented by counsel.   (Page ID 61-114).   On July 27, 2012, the ALJ
issued his decision finding that plaintiff's disability ended as of February 23, 2009.
(Page ID 40-54).   On January 29, 2014, the Appeals Council denied review (Page ID 25-
27), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's
decision.   He asks the court to overturn the Commissioner's decision on the following
grounds:

1.   The ALJ erred in concluding that plaintiff's condition did not meet the
requirements of Listing 12.06.

2.   The ALJ erred in assigning "little weight" to the opinions of plaintiff's
treating psychologist.

(Statement of Errors, Plf. Brief at 9, Dkt. 10, Page ID 947).   The Court finds that
plaintiff's arguments do not provide any basis for disturbing the Commissioner's
decision.   A judgment will be entered affirming it.

## Standard of Review

When reviewing the grant or denial of social security benefits, this Court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).

The scope of the court's review is limited. *Buxton v. Halter*, 246 F.3d at 772. The Court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive. . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton v. Halter*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see*

*Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion.").   "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Sequential Analysis

In determining whether an individual continues to be disabled, the ALJ is to employ an eight-step sequential analysis.  *See* 20 C.F.R. § 404.1594(f).  There is no presumption of continuing disability.  *See Kennedy v. Astrue*, 247 F. App'x 761, 764 (6th Cir. 2007) (citing *Cutlip v. HHS*, 25 F.3d 284, 286-87 n.1 (6th Cir. 1994)).

In step one, the ALJ examines whether the claimant is engaging in substantial gainful activity.  If the answer is yes, the claimant's disability has ended.  Step two is an examination of whether the claimant has an impairment or combination of impairments that meets or equals the severity of a listed impairment.  If answered in the affirmative, disability continues.

Step three is an inquiry into whether there has been medical improvement.  Step four is an examination whether the medical improvement is related to the claimant's ability to perform work.  Step five is an analysis conducted if there has been no medical improvement or the improvement is unrelated to the claimant's ability to perform

-4-

work.  Step six is a determination whether the claimant's current impairments are severe.  If there is no severe impairment, the claimant is not disabled.

Step seven is an assessment of the claimant's "ability to do substantial gainful activity" in accordance with 20 C.F.R. § 404.1560.  That is, the ALJ determines the claimant's residual functional capacity (RFC) based on all his current impairments, and he considers whether the claimant can perform past relevant work.  If the claimant can perform such work, he is not disabled.

Step eight is an administrative finding whether the claimant can perform other work in light of his age, education, work experience and RFC.  If he is capable of performing other work, the claimant is not disabled.  20 C.F.R. § 404.1594(f); *see Hagans v. Commissioner*, 694 F.3d 287, 307-08 (3d Cir. 2012); *Delph v. Astrue*, 538 F.3d 940, 945-46 (8th Cir. 2008).

### The ALJ's Decision

The ALJ found that the administrative decision dated March 25, 2011, was the most recent favorable decision finding that plaintiff was disabled.  It was "the 'comparison point decision' or CPD."  (ALJ Op. at 3, Page ID 42).  Plaintiff's disability insured status expired on March 30, 2011.  (*Id.*).  At the time of the CPD, plaintiff had the following severe impairments: "residuals of microdiscectomy, anxiety/panic disorder and a history of polysubstance dependence."  (*Id.*).  These impairments were found to result in an RFC "to be unable to maintain the stamina and concentration necessary to complete an eight hour workday on a consistent basis or maintain

punctuality and attendance within customary tolerances due to pain while recovering from his surgery." (*Id.*).

Through February 23, 2009, the date the claimant's disability ended, the claimant had not engaged in substantial gainful activity. (*Id.*). The ALJ found that the medical evidence established that plaintiff "did not develop any additional impairments after the CPD through February 23, 2009"; thus, he continued to have the same impairments he had at the time of the CPD. (*Id.*). The ALJ found that "[s]ince February 23, 2009," plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (*Id.* at 3-5, Page ID 42-44).

The ALJ found that medical improvement occurred as of February 23, 2009. (*Id.* at 5-6, Page ID 44-45). He determined that, as of that date, plaintiff retained the residual functional capacity (RFC) for a limited range of sedentary work:

> [T]he claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following limitations: no lifting more than 10 pounds from waist level and no lifting any weight from the floor or over shoulder height; he can stand and walk for only 2 hours in an eight hour workday, with the option to sit or stand as needed; he should not stoop, bend or twist repetitively; and he is limited to unskilled tasks, with occasional contact with the general public, coworkers and supervisors.

(*Id.* at 6, Page ID 45). The ALJ found that plaintiff's testimony regarding "the intensity, persistence and limiting effects" of the symptoms produced by his impairments were not credible beginning February 23, 2009. (*Id.* at 7, Page ID 46).

The ALJ found that plaintiff's medical improvement related to the ability to

work because it resulted in an increase in his RFC. (*Id.* at 13, Page ID 52). As of February 23, 2009, plaintiff had severe impairments, was unable to perform past relevant work, and was classified as a younger individual. (*Id.*).

Based on the testimony of a vocational expert (VE), the ALJ found that plaintiff was capable of performing jobs that existed in significant numbers in the national economy. (*Id.* at 14-15, Page ID 53-54). Accordingly, the ALJ held that plaintiff's disability ended as of February 23, 2009. (*Id.*).

## Discussion

### 1.    Listing 12.06 – Anxiety Related Disorders

The ALJ found that plaintiff did not meet or equal the requirements of any listed impairment, including Listing 12.06 (Anxiety Related Disorders). (ALJ Op. at 3-5, Page ID 42-44). Listed impairments are impairments that are so severe that they render entitlement to benefits a "foregone conclusion." *Combs v. Commissioner*, 459 F.3d 640, 649 (6th Cir. 2006). It is well established that a claimant must show that he satisfies all the individual requirements of a listing. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d at 125; *see also Perschka v. Commissioner*, 411 F. App'x 781, 786-87 (6th Cir. 2010). "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002); *see Malone v. Commissioner*, 507 F. App'x 470, 471 (6th Cir. 2012). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125.

The Listings "were designed to operate as a presumption of disability that makes further inquiry unnecessary" and, consequently, require a higher level of proof than the statutory standard for disability. *Sullivan v. Zebley*, 493 U.S. 521, 532-33 (1990). Thus, for a claimant to meet that heavy burden, he must show the impairment "meet[s] all of the specified medical criteria." *Id.* at 530 (emphasis in original).

Listing 12.06 requires plaintiff to show that he suffers from an "anxiety related disorder" that meets a certain level of severity. 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.06. The required level of severity is met when either the requirements in both paragraphs A and B are satisfied, or when the requirements in both paragraphs A and C are satisfied. *Id.* In this case, the ALJ addressed only the requirements in paragraphs B and C (ALJ Op. At 3-5, Page ID 42-44), apparently assuming plaintiff satisfied the requirements of paragraph A. The Court will do the same.

To satisfy the Paragraph B criteria, plaintiff's mental impairment must result in at least two of the following: (1) "Marked restriction of activities of daily living";[1] (2) "Marked difficulties in maintaining social functioning"; (3) "Marked difficulties in maintaining concentration, persistence, or pace"; and (4) "Repeated episodes of decompensation, each of extended duration."[2] 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.06(B). To satisfy the Paragraph C criteria, plaintiff's mental impairment must

---

[1]A "marked" limitation means one that is "more than moderate but less than extreme." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1200(C).

[2]"Repeated episodes of decompensation, each of extended duration" means "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1200(C)(4).

result in a "complete inability to function independently outside the area of [his] home." *Id.*, § 12.06(C).

The ALJ addressed each of the four components of paragraph B, finding that plaintiff satisfied none. (ALJ Op. at 4, Page ID 43). The ALJ found that plaintiff has a "mild restriction" in his activities of daily living, noting that he watched television and played cards on a game console; that he had calluses on his hands, despite being unemployed since 2007; that he appeared "reasonably fit" at his July 15, 2011, consultative examination; and that he reported doing some household chores. (*Id.*).

In finding "moderate difficulties" in plaintiff's social functioning, the ALJ noted that plaintiff reported the he was able to drive; that he left his house three times a week; and that he was able to go out by himself, including to receive medical treatment, to attend consultative appointments, and to attend his Social Security hearings. (*Id.*). The ALJ also noted that plaintiff got along with his wife, his stepmother, and his stepfather; he also had a close friend. (*Id.*).

With respect to plaintiff's concentration, persistence or pace, the ALJ found that plaintiff had "moderate difficulties. (*Id.*). This finding was supported by an assessment performed by his treating psychologist, in which plaintiff reported no problems with memory, albeit with "some loss in focus secondary to his anxiety." (*Id.*). The ALJ also relied on the fact that plaintiff's treating psychologist's notes did not indicate and significant difficulty with attention or concentration. (*Id.*). In addition, the consultative examination revealed that plaintiff could recall three items after three minutes, and he could perform simple math. (*Id.*).

The ALJ found that plaintiff had experienced no episodes of decompensation of extended duration.[3]   (*Id.*).   The ALJ noted that plaintiff "has had conservative psychiatric treatment consisting of therapy at variable frequencies and some medications prescribed by his primary care physician." (*Id.*).  He also noted that there was no evidence that plaintiff had undergone any psychiatric hospitalizations or "other significant increases in treatment indicative of episodes of decompensation of extended duration." (*Id.*).

Turning to paragraph C, the ALJ found that "the objective medical evidence does not establish the presence of the C criteria." (*Id.*).  He noted:

> [C]laimant is able to drive, play video games, and attend medical appointments without decompensation.  Furthermore, he has even shown the ability to attend appointments with strangers (i.e. consultative physicians, and his hearing with the undersigned) and this has not caused any decompensation.  Moreover, the objective medical evidence repeatedly notes that he is making some progress and his symptoms are stable.  Furthermore, he has been engaging in only "maintenance" type treatment, and he testified he only took his anti-anxiety medication when he was going out. . . .  Although claimant lives with his wife, there is no evidence that this is a highly supportive living arrangement.  He does not require guardianship, he is able to manage his own funds, he does not need assistance with personal care and he does not need reminders to takes his medications or perform his personal care.

(*Id.* at 4-5, Page ID 43-44 (internal citations omitted)).

Plaintiff contends that the ALJ improperly rejected the opinion of his treating psychologist, Gailord Weeks, Ph.D., that he met the requirements of Listing 12.06. (Plf. Brief at 16, Page ID 954).  Although the ALJ must "consider opinions from medical

---

[3]Plaintiff's treating psychologist acknowledged that plaintiff did not have repeated episodes of decompensation.  (Page ID 789, 909-10).

sources on issues such as whether [the claimant's] impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments . . . the final responsibility for these issues is reserved to the Commissioner."   20 C.F.R. § 404.1527(d)(2).  The ALJ was not required to give Dr. Weeks' opinions any special significance.  *See Saucier v. Commissioner*, 552 F. App'x 926, 928 (11th Cir. 2014); *Lowry v. Astrue*, 474 F. App'x 801, 804-05 (2d Cir. 2012); *Russell v. Astrue*, 356 F. App'x 199, 203 (10th Cir. 2009); *see also Vardon v. Colvin*, No. 5:13-cv-2531, 2015 WL 1346851, at *13 (N.D. Ohio March 23, 2015) ("The issue of whether a claimant meets the requirements of a Listing, like the ultimate issue of disability, is not a medical determination but rather a dispositive administrative finding reserved to the Commissioner." (citing 20 C.F.R. § 416.927(e)); *Kepke v. Commissioner*, No. 13-13944, 2015 WL 348747, *7 (E.D. Mich. Jan. 23, 2015) ("Since the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, the ALJ 'will not give any special significance to the source of an opinion[, including treating sources], on issues reserved to the Commissioner . . .' [such as] whether an impairment meets or equals a Listing[.]" (quoting 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3)).

The ALJ considered the opinions of Dr. Weeks in finding that plaintiff failed to demonstrate that his mental impairment met the requirements of Listing 12.06.  The ALJ provided, in some detail, good reasons for this finding.  (*See* ALJ Op. at 4-5, Page ID 43-44).  Plaintiff's assertion that the ALJ relied merely on the "modest level of activity" of "watching television and playing solitaire on a game console" (Plf. Brief at

17, Page ID 955) greatly understates the evidence cited by the ALJ.  A review of the record demonstrates sufficient bases for discounting Dr. Weeks' opinions, as well as substantial evidence to support the ALJ's findings concerning Listing 12.06.

Dr. Weeks' opinion that plaintiff had marked limitations in his daily activities (Page ID 789, 908-09) is contradicted by plaintiff's statements to the effect that he continues to fish twice a month, that he carries firewood, and that "[a]n average day . . . consists of housework including washing dishes by hand, carrying out garbage, performing laundry duties, cooking, vacuuming, and grocery shopping." (Page ID 719). Plaintiff is also able to drive, and he shops by telephone from "fishing and truck catalogs." (Page ID 517).  Dr. Weeks' opinion is also contradicted by his own previous comments.  In his January 31, 2011, treatment summary, Dr. Weeks reported that plaintiff  was "able to manage his anxiety so he can do a number of things on a daily basis"; he also noted that he was working with plaintiff to develop "strategies to help him function more effectively on a day-to-day basis."  (Page ID 742).  The evidence upon which the ALJ relied supports a finding that plaintiff has less than marked limitations.  *See Dominick v. Commissioner*, No. 1:13-cv-00975, 2014 WL 3672935, at *12-13 (N.D. Ohio July 23, 2014) (Evidence that claimant "lives alone without assistance, takes care of his personal needs, performs household tasks, attends to his personal care, shops, and takes the bus to appointments" supported, in part, a finding that claimant did not exhibit marked limitations in daily activities.).

Despite Dr. Weeks' opinion that plaintiff had marked limitations in his social functioning (Page ID 789-90, 909), substantial evidence supports the ALJ's decision

that plaintiff limitations were not that extensive.  For example, plaintiff reported that he was able to go out alone, and could drive (Page ID 517); he has a good relationship with his wife, and gets along well with his mother and stepfather (Page ID 834); and he has one "close friend outside of his family."  (*Id.*).  Further, the psychological consultative examiner opined that plaintiff had no more than "moderate" limitations in his ability to interact appropriately with the public, supervisors, and co-workers. (Page ID 839). This evidence supports a finding that he had less than marked limitations in social functioning. *See Tapley v. Commissioner*, No. 13-cv-262, 2014 WL 1052611, at *5-6 (W.D. Mich. Mar. 18, 2014) (Evidence that claimant "attends monthly support meetings, hangs out with her friends and has a relationship with her boyfriend" were among "good reasons" for discounting treating source's opinion that claimant had marked limitations in social functioning.); *Sanders v. Colvin*, No. 1:13-cv-416, 2014 WL 2802977, at *16 (N.D. Ohio, June 19, 2014) (Evidence that claimant "maintained relationships with his family members, he was in the general population while in prison, and was able to attain his GED and worked as a porter while there" were properly among the reasons for rejecting treating source's opinion that claimant had marked limitations in social functioning).

Dr. Weeks opinion regarding plaintiff's ability to maintain concentration, persistence, or pace was qualified: "[W]hen [plaintiff] becomes anxious and/or is in the process of a panic attack, he will have significant difficulty of marked difficulty with concentration, persistence or pace."  (Page ID 789, 909).  At one point, Dr. Weeks commented that "[t]here have been times of difficulty – concentrating or thinking."

(Page ID 790).  Dr. Weeks did not provide any basis for determining the frequency or duration of plaintiff's panic attacks.

Moreover, there is substantial evidence  that Dr. Weeks overstates the severity of plaintiff's mental impairment.  For example, following his initial meeting with plaintiff in February 2009, Dr. Weeks noted that plaintiff had "[s]ome focus difficulties secondary to anxiety."  (Page ID 716).  Thereafter, Dr. Weeks treated plaintiff more than twenty times (Page ID 715-17, 742-66, 769-72, 818-20, 924-33), and only once noted that he had difficulty with concentration (Page ID 924).  In addition, plaintiff performed well on memory testing with the psychological consultative examiner, who concluded that plaintiff had no limitations in his ability to understand and remember simple instructions, and that there were "few restrictions to his ability to perform simple, repetitive, concrete tasks." (Page ID 837-38).  This evidence supports a finding that plaintiff had less than marked limitations in concentration, persistence or pace. *See Dominick v. Commissioner*, 2014 WL 3672935, at *11 (Consultative examiner's opinion that claimant could understand and follow simple directions supported finding that he had less than marked restrictions in concentration, persistence or pace); *Sanders v. Colvin*, 2014 WL 2802977, at *16 (same).

Of some significance is what is missing from the medical records – any indication that plaintiff has ever required psychiatric hospitalization, or sought emergency room treatment for his mental impairments.  Moreover, the medical records indicate that plaintiff seeks treatment from Dr. Weeks sporadically, and that there are significant gaps in his treatment history.  (*See* ALJ Op. at 8, Page ID 47).  Plaintiff

-14-

testified that he takes medication only when he goes out public (Page ID 74); that he only seeks psychiatric treatment when he needs to, and that he tries to stretch his treatment out to save money, even though he has insurance that covers that treatment. (Page ID 94-97). Despite his stated fear of leaving his home, plaintiff has never been treated at home, and his treating psychologist, Dr. Weeks, has never offered to treat him at home. (Page ID 100-01). Instead, plaintiff has managed to drive himself to see Dr. Weeks, generally going alone. (Page ID 100). All that being said, Dr. Weeks has consistently assessed plaintiff's prognosis with therapy as either "good" or "excellent." (Page ID 744-50, 775, 815-20, 924-33).

It would be an extraordinarily rare case where a claimant for DIB benefits had mental impairments of listing-level severity, and he was able to function as well as plaintiff has without more significant medical intervention. The ALJ's factual findings regarding Listing 12.06 are supported by substantial evidence.

## 2.    The Treating Source Rule

Generally, the medical opinions of treating sources are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). The opinion of a treating source is given "controlling weight" if two conditions are satisfied: "(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) ("[T]he opinion of a treating physician does not receive controlling

weight merely by virtue of the fact that it is from a treating physician.  Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)).  The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d at 773.  An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. HHS*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected.  The weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(c); *Gayheart v. Commissioner*, 710 F.3d at 376; *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has repeatedly held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Gayheart v. Commissioner*, 710 F.3d at 376; *Cole v. Astrue*,

661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith v. Commissioner*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

The issue of whether a claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating source's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. § 404.1527(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician.").

Plaintiff argues that the ALJ erred in failing to give the opinions of his treating psychologist, Dr. Weeks, "controlling weight." (Plf. Brief at 10-16, Page ID 948-54). He specifically contends that the bases cited by the ALJ for discounting Dr. Weeks' opinions did not constitute "good reasons," as required by the regulations. (*Id.* at 13-16, Page ID 951-54).

The ALJ assigned "little weight" to Dr. Weeks' opinions, citing their lack of consistency with the objective medical evidence. (ALJ Op. at 11, Page ID 50). The ALJ discussed at some length his reasons for reaching this conclusion. (*Id.* at 11-12, Page ID 50-51).

First, the ALJ pointed out that Dr. Weeks "consistently ties at least a portion of his opinions to [plaintiff's] physical impairments," despite the fact that, as a psychologist, he is not competent to formulate such an opinion. (*Id.* at 11, Page ID 50). He also noted that Dr. Weeks' claims of plaintiff's consistent pain is undocumented in his treatment notes, and it is unsupported by the medical records, "which document virtually no treatment for [plaintiff's] back." (*Id.*).

Second, the ALJ discussed plaintiff's somewhat sporadic psychological treatment record. (*Id.* at 12, Page ID 51). As noted above, plaintiff acknowledged that he takes medication only when he goes out public (Page ID 74); that he only seeks psychiatric treatment when he needs to, and that he tries to stretch his treatment out to save money, even though he has insurance that covers that treatment. (Page ID 94-97). The record indicates a number of periods of time, some lasting three to four months, in which plaintiff did not see Dr. Weeks at all. (*See* ALJ Op. at 8 (citing Exhs. 7F, 13F, 21F)). Despite all this, there is no evidence of any episodes of decompensation.

Moreover, as the ALJ noted, Dr. Weeks' treatment notes indicate that plaintiff was making progress and that his symptoms were stable. (ALJ Op. at 5, Page ID 44). This observation is born out by the record. On a number of occasions, Dr. Weeks noted that plaintiff's prognosis with therapy was "good" to "excellent" (Page ID 744-50, 775, 815-20, 924-33); he consistently noted that plaintiff was making gradual progress (Page ID 744-50, 752, 754, 760, 762, 764, 766, 770, 772, 818-20, 924-33); and, throughout most of his treatment, that plaintiff's condition was stable. (*Id.*).

The ALJ's finding that Dr. Weeks' opinions conflicted with other record evidence is also well-founded. Examples of these conflicts (including internal conflicts between Dr. Weeks' opinions and his own treatment notes) have been addressed in the discussion of Listing 12.06, above, and need not be repeated here. Such inconsistencies constitute "good reasons" for discounting a treating source's opinions. *See, e.g., Hill v. Commissioner*, 560 F. App'x 547, 549-50 (6th Cir. 2014); *Fry v. Commissioner*, 476 F. App'x 73, 75-76 (6th Cir. 2012).

The ALJ also noted that Dr. Weeks' assessments relied upon plaintiff's subjective complaints. (ALJ Op. at 12, Page ID 51). A treating source's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all." *Francis v. Commissioner*, 414 F. App'x at 804. Moreover, no special significance is attached to treating source opinions regarding the credibility of the plaintiff's subjective complaints, as that is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

The ALJ's findings and conclusions are further supported by the opinions of the state agency psychological examiner, Dennis Mulder, Ed.D., and two state agency consultative reviewers, Ronald Marshall, Ph.D., and Joe DeLoach, Ph.D., all of whose opinions were given "great weight." (ALJ Op. at 10, Page ID 49). The ALJ noted that these opinions were "consistent with the overall objective medical evidence," as well as Dr. Weeks' treatment notes. (*Id.*). The ALJ may rely on such opinions because state agency doctors are "highly qualified" medical experts "who are also experts in Social

Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i); *see also* 20 C.F.R. § 404.1527(c)(6).

Dr. Mulder observed that plaintiff was "in contact with reality"; he was "cooperative but subdued"; and he "appeared to be quite anxious." (Page ID 835). As for plaintiff's mental activity: "[He] was oriented, alert, and nonspontaneous. His speech was clear, coherent, and fluent. His thought processes were relevant, logical, and connected." (*Id.*). Dr. Mulder diagnosed panic disorder without agoraphobia, depressive disorder NOS secondary to physical complaints, and he assigned plaintiff a GAF score of 50 to 55. (Page ID 837). He assessed plaintiff's prognosis:

> The potential for [plaintiff] becoming gainfully employed in a simple, unskilled work situation on a sustained and competitive basis is guarded to fair pending medical resolution and his compliance with psychiatric treatment. [Plaintiff] appeared to have no difficulty understanding, remembering, or following through with simple instructions, and there appears to be few restrictions to his ability to perform simple, repetitive, concrete tasks.

(*Id.*).

While isolated parts of Dr. Mulder's report appear to support Dr. Weeks' pessimistic assessment of plaintiff's mental impairments, overall it supports the ALJ's findings. Dr. Mulder stated that plaintiff was capable of understanding and carrying out simple instructions, and that, with few restrictions, he could perform simple, repetitive tasks. This is consistent with the RFC's provision that plaintiff be limited to "unskilled tasks, with occasional contact with the general public, coworkers and supervisors." (ALJ Op. at 6, Page ID 45).

Dr. Marshall reviewed plaintiff's psychiatric impairments in May 2009 (Page ID 172-86, which included Dr. Weeks' treatment records. (Page ID 175). He opined that plaintiff had "mild" restrictions in activities of daily living, "moderate" difficulties in maintaining social functioning, and "mild" difficulties in maintaining concentration, persistence or pace. (Page ID 178). Dr. Marshall noted no repeated episodes of decompensation of extended duration. (*Id.*). He opined that plaintiff "[r]etains ability to do rote tasks within physical limitations," and that he is "[a]ble to follow at least simple instructions." (Page ID 177). Dr. Marshall noted that plaintiff "[m]ay work better with minimum contact with the public." (*Id.*). As noted above, the RFC is consistent with these findings.

In June 2011, plaintiff's psychiatric impairments were again reviewed by a state agency consultant; this time, Joe DeLoach, Ph.D. (Page ID 212-24). His review included records provided by Dr. Weeks. (Page ID 213). Dr. DeLoach's assessments of plaintiff's mental limitations were similar to those of Dr. Mulder. (Page ID 221-22). Dr. DeLoach opined: "Overall evidence indicates that [plaintiff] retains the capacity to perform simple and repetitive tasks on a sustained basis. He would be limited to working alone or in very small groups." (Page ID 222). Dr. DeLoach's opinions corroborate those of Doctors Mulder and Marshall, as well as the findings of the ALJ.

The ALJ provided good reasons for discounting the weight to be given Dr. Weeks' opinions, reasons supported by substantial evidence. Having considered all of plaintiff's arguments, the Court finds no violation of the treating source rule.

**Conclusion**

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Commissioner*, 245 F.3d at 534.  The ALJ's conclusion that plaintiff is not disabled is supported by substantial evidence.  Accordingly, it will be affirmed.  A judgment will be entered accordingly.


Dated:  March 31, 2015          /s/  Phillip J. Green
                                United States Magistrate Judge